UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ING BANK N.V.,

                              Plaintiff,          Case No. 3:15-cv-00805-JWD-RLB

v.

M/V PORTLAND, IMO NO. 9497854,

HER ENGINES, TACKLE,

EQUIPMENT, FURNITURE,

APPURTENANCES, ETC. IN REM, *ET AL.*

                          Defendants.

**ORDER AND RULING ON MOTIONS TO COMPEL DISCOVERY AND SUFFICIENT DISCLOSURES AND TO VACATE RULE B ATTACHMENT**

**I.**       **INTRODUCTION**

       Before the Court is the Motion to Compel Sufficient Disclosures ("Motion for Disclosure"), (Doc. 24), and the Motion to Compel Discovery ("Motion for Discovery") (collectively, "Plaintiff's Motions" or "Relevant Motions"), (Doc. 26),[1] filed by ING Bank N.V. ("ING," "Bank," or "Plaintiff"), and the Motion to Vacate the Rule B Attachment of the M/V Portland and Reduce Security ("Motion to Vacate"), (Doc. 18), filed by Azuline Shipping and

_____

[1] On April 8, 2016, the originally filed Motion for Discovery was replaced by another. (Doc. 28.) Citations to Document Number 26 are to the swapped variant.

Trading Company ("Azuline"). Appearing "specially," "restrictively," and "solely" as the claimant of one *in rem* defendant herein, Portland M/V, IMO No. 9497854 ("Portland"), as well as her engines, tackle, equipment, furniture, equipment, furniture, appurtenances, and every part, Azuline opposes Plaintiff's Motions with the Memorandum in Opposition to ING's Motion to Compel Sufficient Initial Disclosures ("Opposition to Motion for Disclosure"), (Doc. 25), and the Memorandum in Opposition to ING's Motion to Compel Discovery ("Opposition to Motion for Discovery") (collectively, "Azuline's Oppositions"), (Doc. 31). These five motions echo points made in several other filings, including Plaintiff's Motion for Leave to File Verified First Amended Complaint ("Motion to Amend"),[2] (Doc. 39); Plaintiff's First Amended Verified Complaint ("Amended Complaint"), (Doc. 42); and Azuline's Notice of Opposition to ING's Motion for Leave to File Verified First Amended Complaint, (Doc. 43), ("Opposition to Leave");

---

[2] Federal Rule of Civil Procedure 15 "sets forth the applicable procedural mechanism for amending a complaint." United States v. Approximately $77,000.00 in U.S. Currency, No. 1:11-cv-01251 GSA, 2013 U.S. Dist. LEXIS 179186, at *9, 2013 WL 6842889, at *3 (E.D. Cal. Dec. 20, 2013). According to its first paragraph, "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1); *Dueling v. Devon Energy Corp.*, 623 F. App'x 127, 128 (5th Cir. 2015). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," and a court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). For two different reasons, as stated by this Court at the conference held on April 22, 2016, (Doc. 41), and as asserted in the Motion to Amend, (Doc. 39), this Court granted the Motion to Amend. First, as Azuline itself has never answered, the twenty-one day timespan set in Rule 15(a)(1) has not yet commenced. Second, even if this watch had run by virtue of the filing of either Nomikos' answer, (Doc. 15), or Azuline's Motion to Vacate, (Doc. 18), Rule 15(a)(2) "evinces a bias in favor of granting leave to amend." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). Thus, "unless there is a substantial reason, such as undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, the discretion of the district court is not broad enough to permit denial." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (citations omitted) (internal quotation marks omitted). The Court found no such motives or undue burden in light of, among other matters, Plaintiff's general promptness and Azuline's refusal to permit even minimal discovery and evident ability to mount a credible defense.

and Azuline's Answer and Affirmative Defenses to the Verified First Amended Complaint ("Amended Answer"), (Doc. 44). Unlike this matter's substantive law, the single issue raised in the Relevant Motions and presently contested by ING and Azuline (collectively, "Parties") is whether Plaintiff is entitled to discovery into facts supporting the jurisdictional claim, one initially advanced in its first pleading ("Complaint"), (Doc. 1), and further amplified in the Amended Complaint, (Doc. 42), that Portland "was and is beneficially owned, operated and managed by" A.M. Nomikos Transworld Maritime Agencies, S.A. ("Nomikos"), "and is the alter ego of the registered vessel owner, Azuline," (Doc. 26-1). Plaintiff aks this Court to allow it to conduct such discovery, as it is essential to establishing this tribunal's subject-matter jurisdiction ("jurisdictional discovery") and remains questionable only by virtue of Azuline's resistance to Plaintiff's every attempt at uncovering the relationship, if any, between Azuline, the Portland's recorded owner, and Nomikos, this same vessel's purported manager. Azuline, in turn, requests the Court to do the very opposite by granting its Motion to Vacate.

While both Parties rely on a handful of contrary cases,[3] three longstanding principles guide this Court's resolution of this dispute. First, the scope of discovery under the Federal Rules of Civil Procedure[4] is broad, bounded by a few construed limits. Second, whenever a factual question regarding a court's jurisdiction exists, a party is traditionally entitled to receive an opportunity to secure and present evidence related to this threshold issue, and the decision regarding such discovery's appropriateness lies wholly within the relevant trial court's discretion. Third (and relatedly), if such discovery is permitted, it should be circumspectly

---

[3] Admirably, Defendant's counsel acknowledged the paucity of case law during this Court's April conference.

[4] In this order and ruling ("Ruling"), any and all references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

monitored and tightly demarcated. In general, then, the party is normally allowed to do no more than necessary to verify allegations of specific facts crucial to a federal court's jurisdictional determination. Undeniably, admiralty, the substantive law which governs this suit, often compels the application of unique principles. Nevertheless, these precepts' retain their potency whenever jurisdictional questions arise at a case's commencement.

Accordingly, having employed these tenets, this Court concludes that, in the Complaint, the Plaintiff has alleged sufficient facts that, if substantiated, would amply support this Court's *in rem* jurisdiction over the Portland and *in personam* jurisdiction over Nomikos, the defendant being sued *in personam* and Azuline's alleged alter ego, allegations properly and effectively augmented in the Amended Complaint. Due to the evident plausibility of Plaintiff's alter ego claims, the Rules, which prioritize the just and efficient adjudication of every action and entitle any party to discovery into any non-privileged matter that is relevant to its opponent's claims or defenses, strongly militate in favor of Plaintiff's invocation of Rule 26, the statutory basis for both the Motion for Disclosures and the Motion for Discovery. This result, in turn, is supported by the overwhelming weight of the jurisprudence construing the Supplemental Rules for Admiralty or Maritime Claims.[5] Though Defendant has offered up a few cases to buttress its response, these opinions are too few in number and too questionable in reasoning to persuade this Court to disregard this venerable axiom.

---

[5] In this Ruling, any and all references to "Admiralty Rule" or "Admiralty Rules" are to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture, technically amendments to the Rules themselves.

For these reasons, as discussed more fully below, this Court GRANTS the Motion for

Disclosures and the Motion for Discovery and DENIES WITHOUT PREJUDICE Azuline's

Motion to Vacate.[6]


## II.    BACKGROUND

## A.    RELEVANT FACTS

Prior to this suit, O.W. Bunker & Trading A/S and O.W. Bunker China, Ltd.

(collectively, "Bunker") made a number of deliveries to three separate vessels: the Portland; the

M/V/ Annika N., IMO No. 9514054 ("Annika"); and M/V Melchior, IMO No. 9100102

("Melchior") (collectively, "Supplied Vessels"). (Doc. 1 at 2–3; Dc. 42 at 2–3.) In the process,

Bunker issued invoices to Furness Withy Chartering Ltd. ("Furness"), "Nomikos' broker for the

procurement, supply and delivery of bunkers, lubricants and other marine fuel to the Portland

and the other Supplied Vessels." (Doc. 1 at 4.) The invoices appended to the Complaint bear this

out, as the first two are addressed to "A.M. Nomikos / Transworld Maritime Agencies SA / C/O

Furness Withy Chartering Co." (*See, e.g.*, Doc. 1-2 at 1, 5; Doc. 1-3 at 1, 5; Doc. 1-4 at 5.)

According to the Complaint, Nomikos had multiple "alter egos," including AMN Bulk Carriers,

Inc. and A.M. Nomikos & Sons (UK) Ltd. (Doc. 1 at 11, 13–14; Doc. 42 at 11; *see also* Doc. 16

at 2.) Most relevantly to the case at hand, the Portland was alleged to be "beneficially owned,

operated and managed by Nomikos and Nomikos' wholly owned and controlled subsidiary,"

Azuline,[7] (Doc. 1 at 2, 4; Doc. 42 at 2, 4; Doc. 42 at 3, 4, 18, 19, 20–21), Portland's "registered

---

[6] Naturally, Azuline may freely refile this motion upon the conclusion of the Parties' limited
discovery. Plaintiff's failure to substantiate its allegations after such discovery may indeed prove
fatal to the Portland's continued attachment.

[7] The Answer was jointly filed by Nomikos and Azuline. (Doc. 15; Doc. 16 at 2.)

owner,"[8] (Doc. 1 at 4). According to the Demetriades Affidavit, Azuline is a Librarian corporation with a registered office of 80 Broad Street, Monrovia, Liberia, "wholly owned" by Bass Holding SA ("Bass"), another Liberian company located at the same registered office. (Doc. 18-3 ¶¶ 4 –6).

"[A] banking and financial services corporation or business entity organized and existing under the laws of The Netherlands," ING eventually became the "assignee of certain accounts, assets and maritime liens" once owned Bunker. (Doc. 1 at 2; Docs. 1-1, 1-2, 1-3, 1-4; Doc. 42 at 2.) Allegedly, Plaintiff holds the accounts receivables owed by Nomikos for bunkers supplied and delivered to the Subject Vessels. (Doc. 1 at 2; Dc. 42 at 2.) When Bunker defaulted on its $70 million obligation to ING, (Doc. 1 at 3; Doc. 42 at 3), and after it declared bankruptcy, (Doc. 18-2 at 2 –3), pursuant to Section 1333 of the United States Code's twenty-eighth title,[9] Admiralty Rules C and B, and Rule 9(h), ING exercised its discretion to proceed against the Portland *in rem* and Nomikos *in personam*. (Doc. 1 at 6–7; Doc. 42 at 7.) Pursuant to this Court's orders, ING secured the Portland's arrest and attachment, (Docs. 7, 8), and the release of the vessel was secured pursuant to a letter of undertaking given by United Kingdom Mutual Steam Ship Assistance Association (Europe) Limited (UKE), (Doc. 10-1). Subsequently, when ING sought to obtain initial disclosures and further discovery from Nomikos' alleged alter ego,

---

[8] In an "unsworn" affidavit attached to the Motion to Vacate ("Demetriades Affidavit"), (Doc. 18-3; Doc. 24-5), Mr. Christophoros Demetriades ("Demetriades"), "the sole director of Azuline," attempts to parry these allegations with detail. (Doc. 18-1 at 11; Doc. 18-3 ¶ 8.) For example, Demetriades avers that Azuline had no more than a contractual relationship and shares no corporate office with Nomikos and that Nomikos has no involvement in Azuline's "incorporation" or "day-to-day corporate operations." (Doc. 18-3 ¶¶ 9–13.) He concludes with a legal assertion: "Azuline and Nomikos are completely separate corporate entities with independent corporate existences." (*Id.* ¶ 16.)

[9] In this Ruling, any and all references to "Section 1333" or "§ 1333" are to this particular section of the Title 28 of the United States Code.

Azuline, (Doc. 24-1 at 1; Doc. 26-1 at 4), after Azuline filed the Motion to Vacate, Azuline

refused to supply any information. (*See, e.g.*, Doc. 26-1 at 6–7.) Azuline did so for one apparent

reason: as its responses indicate, (Doc. 26-1 at 4–5), the Complaint's purported deficiency under

Rule E(2)(a). *See infra* Part II.C.


## B.   PROCEDURAL HISTORY

On November 30, 2015, ING filed four documents: the Complaint, (Doc. 1); the Motion

for Issuance of a Warrant of Arrest Pursuant to Admiralty Rule C ("Motion for Arrest"), (Doc.

2); and the Motion Authorizing Issuance of a Writ of Attachment and Garnishment Pursuant to

Supplemental Admiralty Rule B ("Motion for Attachment"), (Doc. 3); and the Motion to Allow

Vessel to Move Within Port ("Motion to Allow"), (Doc. 4). On that same day, this Court granted

the Motion for Arrest, (Doc. 6), the Motion for Attachment, (Docs. 7, 8), and the Motion to

Allow, (Doc. 9). This arrest and attachment was released at ING's request on December 3, 2015.

(Doc. 10.) Azuline submitted the Notice of Verified Statement of Rights or Interest on December

16, 2015. (Doc. 13.) A scheduling order was entered on December 21, 2015. (Doc. 14.)

On January 21, 2016, Nomikos answered the Complaint. (Doc. 15.) Azuline tendered the

Motion to Vacate on March 14, 2016. (Doc. 18.) Plaintiff filed the Motion for Disclosure on

March 29, 2016, (Doc. 24); the Opposition to Motion for Disclosure arrived on April 8, 2016,

(Doc. 25). The Motion for Discovery came on April 8, 2016, (Docs. 26, 27-1), and Azuline's

counter was first filed on April 15, 2016, (Doc. 31), and formally docketed on April 19, 2016,

(Doc. 37). In chambers, oral argument was held on April 22, 2016. (Docs. 38, 40.) At this

argument's conclusion, the Court afforded Plaintiff an opportunity to request permission to

amend the Complaint pursuant to Rule 15. (Docs. 38, 40.) Plaintiff did so on April 27, 2016,

(Doc. 39), and the Amended Complaint was entered on April 29, 2016, (Doc. 42). Azuline filed the Opposition to Leave on May 2, 2016. (Doc. 43.) Seventeen days later, Nomikos submitted the Amended Answer. (Doc. 44.)

### C.   PARTIES' ARGUMENTS

### 1.   Motion for Disclosure

Plaintiff seeks an order to compel Azuline "to provide sufficient initial disclosures in accordance with . . . [Rule] 26(a)(1) as concerns either the production of a copy or the provision of a description of documents and tangible things Azuline has in its possession, custody, or control to support" the Motion to Vacate. (Doc. 24 at 1.) Specifically, ING now demands a copy or adequate description "including but not limited to" the following documents: (1) the agreement between Azuline and Nomikos; (2) Azuline's articles of incorporation; (3) the articles of incorporation of Bass, Azuline's alleged Liberian owner; (3) Azuline's corporate resolutions; (4) Bass' corporate resolutions; (5) Azuline's by-laws; (6) Bass' by-laws; (7) Azuline's tax returns for the last three fiscal years; (8) Bass' tax returns for the same period; and (9) any other documents or tangible things that Azuline will rely on to support its defense that Nomikos is not its alter ego. (*See* Doc. 25-1.) In making this request, Plaintiff characterizes the initial disclosures provided by Azuline on March 23, 2016, as improper under Rule 26(a)(1)(A)(ii) due to Azulein's "failure to either produce a copy of or an adequate description of all documents and tangible things that it may use to support its defenses." (Doc. 24-1 at 2.)

The sole document "Azuline referenced in its Initial Disclosures" was the Demetriades Affidavit. (*Id.*) Yet, even though this lone document "referenced the corporate documents and shareholder information of Azuline and Bass," these documents were never provided; only

Demetriades' words were offered to substantiate Azuline's defense. (*Id.* at 2–3.) More support was lacking, as "Demetriade's declaration also referenced an agreement between Azuline and Nomikos concerning the M/V PORTLAND" that has never been provided. (*Id.* at 3.) In light of both this absence of supporting documentation and one declaration's plethora of unverifiable claims, Azuline failed to comply with Rule 26(a)(1)(A)(ii) by having failed to provide any specificity regarding the documents upon which it now relies to support its defense to Plaintiff's alter ego claim. (*Id.*) Contending that Rule 37(a)(4) allows this Court to punish Azuline for "evasive or incomplete disclosure," Plaintiff ends with a request for "an Order, pursuant to Fed. R. Civ. P. 37(a)(3) to compel Azuline to supplement its initial disclosures either to produce a copy of or to provide an adequate description of all documents referenced in Mr. Demetriades' declaration and otherwise falling within the provisions of Fed. R. Civ. P. 26(a)(1)(A)(ii)." (*Id.* at 4.)

In response, Azuline attacks Plaintiff's claims as "premised on the conclusory allegation that Nomikos should be considered the beneficial owner of all three vessels because it is purportedly the alter ego of the actual vessel owners." (Doc. 25 at 1.) In its view, these assertions do not meet Admiralty Rule E(2)(a)'s "requirement that such claims be pled with 'particularity' and ING cannot demonstrate 'probable cause' for its attachment of the PORTLAND." (*Id.* at 2.) Due to this pleading defect, Plaintiff "is not entitled to conduct post-attachment discovery in response to Azuline's Motion to Vacate" so as to "bolster retroactively its alter ego claims and avoid dismissal." (*Id.* at 2 (citing *Oldendorff Carriers GmbH & Co., KG v. Grand China Shipping (Hong Kong) Co.,* No. C-12-074, 2012 U.S. Dist. LEXIS 188347, 2012 WL 3260233, at *8 (S.D. Tex. July 2, 2012)).) In other words, Azuline's opposition to the Motion to Compel is, first and foremost, predicated on the Complaint's apparent inadequacy.

Nonetheless, Azuline maintains that the "initial disclosures are not deficient" and that "parties are not entitled to compel the production of documents in connection with initial disclosures." (*Id.* at 3.) Regardless, it fully complied with Rule 26(a)(1)(A)(ii), as Rule only requires "that Azuline disclose documents that <u>Azuline</u> may use to support its claims or defenses," not that It provide Plaintiff with "useful" documents. (*Id.* at 4 (emphasis in original) (citing to *Yaccarino v. Motor Coach Indus., Inc.*, No. 03-4527, 2006 U.S. Dist. LEXIS 97208, at *21, 2006 WL 5230033, at *6 (E.D.N.Y. Sept. 29, 2006)).) Even if Azuline had to disclose the requested documents, "Rule 26 only requires Azuline to provide 'a description by category and location' of such documents." (*Id.* at 5.) Azuline contends that "'a listing of materials by category . . . satisfies Rule 26(a)(1)(A)(ii)''; such a listing it provided. (*Id.*; *see also* Doc. 24-3) The objective of Rule 26(a)(1)(A)(ii) disclosures "is to enable the other parties to make informed decisions about which documents they should request be produced pursuant to Rule 34, and to enable them to frame document requests that will avoid squabbles about wording." (*Id.* at 6 (internal quotation marks omitted) (quoting MILLER ET AL., FED. PRAC. & PROC. CIV. § 2052 (3d ed. 1999)).) For these reasons, Azuline argues that Plaintiff's "motion to compel should be denied." (*Id.* at 6.)

### 2.   Motion to Compel

Traceable to the same alleged intransigence behind the Motion for Disclosure, the Motion to Compel "requests this Court enter an order compelling Azuline to respond to ING Bank's written discovery within 7 days." (Doc. 26 at 1.) According to ING, Azuline chose not to comply with Rule 26 when it willfully "did not provide any substantive answer to any of the foregoing written discovery"; "[r]ather Azuline produced a total of 144 pages of objections," in which the

same three cases are cited, (Doc. 26-1 at 2, 4 –5.) Azuline's objections, which were primarily

that discovery was "premature in light of Azuline's pending Motion to Vacate the Rule B

Attachment of the . . . PORTLAND and Reduce Security," are contrary to the applicable law,

and should be overruled and stricken by the Court." (*Id.* at 2, 5.) In support, Plaintiff first stresses

discovery's great breadth and general liberality, so much so that "Parties resisting discovery bear

the burden of justifying their objections and bases for not responding to requests." (*Id.* at 5–6

(citing to *Chiasson v. Zapata Gulf Marine Corp*., 988 F. 2d 513, 517 (5th Cir. 1993), and

*McLeod, Alexander, Powel, & Apffel, P.c. V. Quarles*, 894 F. 2d 1482, 1485 (5th Cir 1990)).)

Thereafter, pointing out that the Complaint asserts the Portland "was and is beneficially

owned, operated and managed by Nomikos, and is the alter ego of the registered vessel owner

Azuline," Plaintiff now seeks no more than crucial information to verify the claims advanced in

Demetriades' "self-serving declaration." (*Id.* at 6.) Plaintiff argues that "a substantial amount of

the information rests within the sole custody of Azuline, Nomikos, and the other Nomikos alter

ego entities, to which ING Bank has directed its foregoing written discovery." (*Id*.; *see also, e.g.*,

Doc 1 at 2.) As "[a]ll parties must be given a reasonable opportunity to present all the material

that is pertinent to the motion," Plaintiff merits "an opportunity to obtain adequate discovery," a

chance afforded by a number of other courts. (*Id.* at 6–7.) Indeed, while it can cite to numerous

opinions, Azuline relies on deeply flawed cases.[10] (*Id.* at 7–9.) Thus, Plaintiff implores this Court

to follow a familiar principle—"When a factual question governs the Court's jurisdiction, the

Plaintiff must have ample opportunity to secure and present evidence relevant to the

jurisdictional question"—and therefore "strike the objection of prematurity, and require Azuline

to fully and completely respond to each Request for Admission, Interrogatory, and Request for

---

[10] These cases are dissected later in this Ruling. *See infra* Part III.B.2.

Production." (*Id.* at 9.) In the end, because its every request bears upon "the alter ego status of Azuline, Nomikos, and the other Nomikos alter egos near the time the M/V PORTLAND was arrested and attached," no other result accords with the Rules and with precedent.

On March 14, 2016, Azuline challenged the sufficiency of ING's alter ego allegations by means of the Motion to Vacate. (Doc. 31 at 2.) Quoting this rule, Azuline asserts: "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing which the plaintiff shall be required to show why the arrest or attachment should not be vacated." (*Id.*) For the attachment not to be vacated, the pleading standard encoded in Admiralty Rule E(2)(a) must be met. (*Id.* at 4 (citing, among others, *United States v. $49,000 Currency*, 330 F.3d 371, 376 n.8 (5th Cir. 2003)).) Per this criterion, "[a] plaintiff must, therefore, do more than simply provide greater detail than it otherwise would be required to do under Rule 8 of the Federal Rules of Civil Procedure." (*Id.* (also citing *Ronda Ship Mgmt. Inc. v. Doha Asian Games Organising Comm.,* 511 F. Supp. 2d 399, 404 (S.D.N.Y. 2007)).) As encapsulated in the Complaint, however, Plaintiff's allegation that Azuline is Nomikos' alter ego will not do, as it is "unsupported by any substantive factual allegations and falls far short of Supplemental Rule E(2)(a)'s requirement that such claims be pled with 'particularity.'" (*Id.* at 2.) Therefore, "it cannot be said that the PORTLAND is the property of Nomikos and the Rule B attachment premised upon that fiction must be vacated." (*Id.* at 2, 4 (relying on, among others, *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013)).)

Per Azuline, "Rule E properly places the focus of the post-attachment hearing on the allegations of the complaint." (*Id.* at 6.) But, as written and docketed, the Complaint simply does not meet its particularity requirement as construed by several courts, including *Vitol*, "[the] leading case on this issue at the circuit level." (*Id.* at 4–6.) With its first pleading so flawed,

having attempted to distinguish Plaintiff's own case law, "ING is not entitled to embark on a fishing expedition in the vain hope that it will discover some evidence to support its alter ego theory." (*Id.* at 6.) Regardless of discovery's underlying goals, the result that it seeks—denial of ING's discovery motions and the Portland's release—most closely cohere with the "core purpose of Rule E": while "[v]essel owners have long claimed that the ex parte nature of Rule B attachments violates the procedural due process clause of the Fifth Amendment to the United States Constitution," "[t]hose challenges have been unsuccessful only because of the procedural protections contained in Rule E." (*Id.* at 10 (citing *Schiffahartsgesellschaft Leonhardt & Co. V. A. Bottacchi S.A. De Navegacion*, 773 F.2d 1528, 1539 (11th Cir. 1985)).) Simply put, for the same reason it opposed Plaintiff's request for initial disclosures, Azuline now opposes the Motion for Discovery: as a matter of law, Plaintiff is not "entitled to conduct discovery on its alter ego theories in advance of the Court's ruling on Azuline's Motion to Vacate." (*Id.* at 3.)


## III.   DISCUSSION

### A.   APPLICABLE LAW

#### 1.   Admiralty Statute

In accordance with § 1333(1), any district court has "original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction" and "[a]ny prize brought into the United States and all proceedings for the condemnation of property taken as prize." 28 U.S.C. § 1333; *Lozman v. City of Riviera Beach*, 133 S. Ct. 735, 739, 184 L. Ed. 2d 604 (2013); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 748, 181 L. Ed. 2d 881 (2012). With constitutional roots, this statute both grants a district court the authority to grant attachments and arrests in actions *in rem* and provides a sufficient basis for a court taking

jurisdiction over alter ego claims relating to the effected vessel. *Flame S.A. v. Freight Bulk Pte Ltd.*, 807 F.3d 572, 582 (4th Cir. 2015) (citing *Swift & Co. Packers v. Companai Columbiana Del Caribe, S.A.*, 339 U.S. 684, 689 n.4, 70 S. Ct. 861, 865 n.4, 94 L. Ed. 1206 (1950)); *see also, e.g.*, *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997); *Atlanta Shipping Corp. v. Chem. Bank*, 631 F. Supp. 335, 341 (S.D.N.Y. 1986). Indeed, the Fifth Circuit has left no doubt about the existence of this power and the jurisdictional nature of this inquiry: as it once wrote, federal courts sitting in admiralty "can pierce the corporate veil of a corporation in order to reach the 'alter egos' of the corporate defendant directly involved," a "heavily fact-specific" analysis. *Talen's Landing, Inc. v. M/V Venture, II*, 656 F.2d 1157, 1160 (5th Cir. 1981); *accord, e.g.*, *Crane v. Green & Freedman Baking Co.*, 134 F.3d 17, 21 (1st Cir. 1998); *cf. Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586 (5th Cir. 2010) ("[A] court which has jurisdiction over a corporation has jurisdiction over its alter egos."); *OS Shipping Co. v. Global Mar. Trust(s) Private Ltd.*, No. 11-CV-377-BR, 2011 U.S. Dist. LEXIS 49054, at *14, 2011 WL 1750449, at *6 (D. Or. May 6, 2011) ("Admiralty courts may pierce the corporate veil in order to reach the 'alter egos' of a corporate defendant." (quoting *Chan*, 123 F.3d at 1294)). Of course, "[f]ederal courts sitting in admiralty must apply federal common law when examining corporate identity." *Holborn Oil Trading, Ltd. v. Interpetrol Bermuda, Ltd.*, 774 F. Supp. 840, 844 (S.D.N.Y. 1991); *accord, e.g.*, *Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC*, 851 F. Supp. 2d 504, 508–09 (S.D.N.Y. 2012).

As such, when one party articulates an alter ego claim and another attacks it as purportedly insufficient, the extent of a court's admiralty jurisdiction has been placed at issue, and federal common law must be consulted. *Cf., e.g.*, *Sabine Towing & Transp. Co. v. Merit Ventures, Inc.*, 575 F. Supp. 1442, 1446 (E.D. Tex. 1983) (citing *Swift*, 339 U.S. at 689). In

addition, the establishment of a non-party's status as an alter ego and the precise import of an alleged agency relationship in attachment matters frequently necessitates resolution of an intensely factual jurisdictional inquiry over which this Court may exercise its constitutional and statutory authority in admiralty cases. *See, e.g.*, *KPI Bridge Oil Singapore PTE Ltd. v. Berlian Laju Tanker Tbk PT*, No. C 12-00710 WHA, 2012 U.S. Dist. LEXIS 37751, at *10 –11 (N.D. Cal. Mar. 20, 2012); *ABN AMRO, Inc. v. Capital Int'l, Ltd.*, 595 F. Supp. 2d 805, 822 (N.D. Ill. 2008). Since a court's jurisdiction over an alter ego is coextensive with its jurisdictional reach over the sham (or dummy) corporation, facts relevant to an alter ego analysis are ineluctably jurisdictional in nature and often clouded at a case's inception. *Cf., e.g.*, *Dolco Invs. Ltd. v. Moonriver Dev., Ltd.*, 486 F. Supp. 2d 261, 271 (S.D.N.Y. 2007); *Wajilam Exports Singapore Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275 (S.D.N.Y. 2006).


**2.     Admiralty Rules**

        In this substantive area, the Rules and the Admiralty Rules intermingle, occasionally even clashing. *See* Sᴜᴘ. Mᴀʀ. R. A(2); *United States v. $134,972.32 Seized from FNB Bank, Acct. No. 5351*, 94 F. Supp. 3d 1224, 1229 (N.D. Ala. 2015). Whenever such a conflict emerges, the Admiralty Rules rightly control. Sᴜᴘ. Mᴀʀ. R. A(1)–(2), G(1); *see also, e.g.*, *Approximately $77,000.00 in U.S. Currency*, 2013 U.S. Dist. LEXIS 179186, at *9 n.2, 2013 WL 6842889, at *3 n.2. Thus, though Azuline cites to Rule 8 and impliedly relies upon the Court's *Twombly* and *Iqbal* decisions, (*See* Doc. 31 at 6 n.14, 9–10), Admiralty Rule E contains the only relevant pleading standard for such actions.[11] *See Vitol,* 708 F.3d at 547. *But see United States v. Vehicle*

---

[11] Crucially, the standard for dismissal remains the same, as the Admiralty Rules contain no specialized criterion.

*2007 Mack 600 Dump Truck*, 680 F. Supp. 2d 816, 827 (E.D. Mich. 2010) (citing *United States v. $ 41,580.00*, 253 F. App'x 880, 881–82 (11th Cir. 2007)).

This rule requires that any "complaint . . . state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." SUP. MAR. R. E(2)(a). Per the Admiralty Rules' plain text, this unique standard, rather than any other erected by the Rules, applies when a court must pass on the sufficiency of the action concerns, as it does so here, maritime attachment and garnishment. *See, e.g.*, *United States v. 4323 Bellwood Circle, Atlanta, Georgia 30349*, 680 F. Supp. 2d 1370, 1372 (N.D. Ga. 2010) (finding that "the traditional pleading rules are modified by" the Admiralty Rules and applying Admiralty Rule G(2) to determine the sufficiency of the forfeiture complaint); *United States v. $22,173.00 in United States Currency*, 716 F. Supp. 2d 245, 249 (S.D. N.Y. 2010) (finding that Admiralty Rule G(2), rather than Fed. R. of Civ. P. 8, governs the sufficiency of a civil forfeiture complaint); *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 571 F. Supp. 2d 1, 16 (D.D.C. 2008) (finding that Supplemental Rule G creates a heightened pleading requirement for civil forfeiture complaints as compared to the Rule 8 standard applicable in other cases). When forfeiture is sought, as a case cited by Azuline itself clarifies, (Doc. 31 at 4–5), it has also been held to require that "a complaint . . .  allege sufficient facts to support a reasonable belief that . . . property is subject to forfeiture," *Vitol,* 708 F.3d at 542; *accord, e.g.*, *U.S. v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002); *see also, e.g.*, *United States v. $829,422.42 in United States Currency Seized from Account No. XXXXX2771 at Citibank, N.A.*, No. 3:08CV00914 (DJS), 2009 U.S. Dist. LEXIS 51133, at *14–15 (D. Conn. June 18, 2009). Thus, if a defendant can "frame a responsive pleading" without the need for a more definite statement and so long as the

pertinent pleading's allegations do not dwell solely in "the realm of the purely speculative," Admiralty Rule E's unambiguous bar has been met and surpassed. *E.g.*, *Vitol, S.A.*, 708 F.3d at 545; *Puerto Rico Ports Auth. v. BARGE KATY-B*, 427 F.3d 93, 105 (1st Cir. 2007); *Monragon*, 313 F.3d at 865. While Rule 8 and Admiralty Rule E may overlap, the latter compels no greater specificity, so says the opinion—the Fourth Circuit's *Vitol*—that Azuline describes as the "leading case this issue at the circuit level," (Doc. 31 at 4). The factual allegations, taken as true, need only support the relevant claim and allow a defendant to launch an investigation and frame a response. *See All Assets Held at Bank Julius Baer & Co.,* 571 F. Supp. 2d at 16.

### 3.    Rules' Fifth Title

Rule 26 sets forth discovery's basic limits, FED. R. CIV. P. 26, while Rule 1 sets forth the overarching tenets—efficiency and justice—intended to dictate a court's interpretation of any single rule, FED. R. CIV. P. 1. Generally, Rule 26 allows for broad fact discovery into a party's claims and defenses, with courts admonished not to so narrowly apply them "so as to deprive a party of the discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." *Jones v. Forrest City Grocery, Inc.*, No. 4:06CV00944-WRW, 2007 U.S. Dist. LEXIS 19482, at *2 & n.3, 2007 WL 841676, at *1 & n.3 (E.D. Ark. Mar. 16, 2007) (quoting *Trevion v. Celanese Corp.*, 701 F.2d 397, 405 (5th Cir. 1983)). By precedent, its ambit is circumscribed only by those limitations that "come into existence when the inquiry touches upon the irrelevant" or when a request "encroaches upon the recognized domains of privilege" or offends the balancing test set in Rule 26(b). *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947). Pursuant to Rules 1 and 26, discovery should rarely be restricted if ostensibly relevant evidence lies in another's files on the basis of alleged irrelevance or asserted,

but unproved, inconvenience. As in all discovery matters, a district court's discretion in demarcating these borders is "broad." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 856 (5th Cir. 2000); *accord, e.g.*, *Belhas v. Moshe Ya'Alon*, 515 F.3d 1279, 1290 (D.C. Cir. 2008). Inevitably, it is case-specific.


**B.     APPLICATION**

In light of the foregoing principles, Plaintiff's Motions must be granted for two reasons. First, admiralty law's bare precedent supports Plaintiff's Motions, a position equally consistent with the pro-discovery mandate encoded in Rules 1 and 26. Second, the cases cited by Azuline in its response to Plaintiff's Request for Production, (Doc. 26-1), and whose conclusions it now implores this Court to adopt, (*See, e.g.*, Docs. 26, 31), do not fit this case's particular set of facts. Once these differences are uncovered, not one of these non-binding cases can be deemed wholly dispositive or convincing. For these two causes, with this Court's jurisdiction at issue and with discovery having been impeded by Azuline's ambiguous responses, this Court will honor the Rules' animating objectives: "Rule 26 must be read in light of its dual purposes of narrowing the issues and eliminating surprise." *McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 735 (6th Cir. 2002); *see also, e.g.*, *U.S. Commodity Futures Trading Comm'n v. Parnon Energy, Inc.*, 593 F. App'x 32, 36 (2d Cir. 2014) ("Relevance to the subject matter under Rule 26 is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." (internal quotation marks omitted) (quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978))); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) ("The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad.");

*Teichgraeber v. Memorial Union Corp. of Emporia State Univ.*, 932 F. Supp. 1263, 1265 (D. Kan. 1996) ("Discovery relevance is minimal relevance, which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence." (citation omitted) (internal quotation marks omitted)).[12]

**1.       Sufficiency of the Complaint and the Propriety of Jurisdictional Discovery**

In specifying the general limits for jurisdictional discovery in and outside of admiralty law's purview, the vast majority of federal courts have reached the exact same conclusion: "When . . . there is . . . a factual question regarding a district court's jurisdiction, the district court must give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Hansen v. PT Bank Negara Indon.*, 601 F.3d 1059, 1063–64 (10th Cir. 2010) (citing *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000), as to a foreign sovereign's entitlement to immunity); *see also, e.g.*, *Toys R Us., Inc. v. Step Two*, 318 F.3d 446, 456 (3d Cir. 2003) (affirming the principle that "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous" and collecting cases so concluding); *Raccoon Recovery, LLC v. Navoi Mining & Metallurgical Kombinat*, 244 F. Supp. 2d 1130, 1141 (D. Colo. 2002) (noting that a district "court has discretion to permit limited discovery with respect to jurisdictional issues"); *Gould, Inc. v. Pechiney Ugine Kuhlman*, 853 F.2d 445, 451 (6th Cir. 1988) (same); *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (same). The Fifth Circuit has itself described this juridical obligation in the same terms. *Box v. Dallas Mexican Consulate Gen.*, 487 F. App'x 880, 884 (5th

---

[12] While the Rules were amended effective December 1, 2015, the relevance standard for discovery has not changed. Instead, the proportionality factors once set in Rule 26(b)(2)(C) have now been moved into Rule 26(b)(1) so as to reemphasize the fact that evidence's discoverability is subject to the proportionality test first adopted in 1983. Relevance itself, a discrete and separate yet oft-merged requirement, remains a relatively low threshold.

Cir. 2012); *see also, e.g., McAllister v. FDIC*, 87 F.3d 762, 766 (5th Cir. 1996) ("When a district court makes factual determinations decisive of a motion to dismiss for lack of jurisdiction, it must give plaintiffs an opportunity for discovery and a hearing that is appropriate to the nature of the motion to dismiss"); *cf. Intelsat Global Sales & Mktg. Ltd. v. Cmty. of Yugoslav Posts Tels. & Tels.*, 534 F. Supp. 2d 32, 34 (D.D.C. 2008) ("[A] court should allow for limited jurisdictional discovery if a plaintiff shows a non-conclusory basis for asserting jurisdiction and a likelihood that additional supplemental facts will make jurisdiction proper."). Naturally, convinced by this overwhelming body of case law, court after court has authorized such precisely focused discovery in admiralty cases. *See, e.g., China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc.*, 882 F. Supp. 2d 579, 588 (S.D.N.Y. 2012); *Res. Marine Pte, Ltd. v. Solym Carriers (London) Ltd.*, No. 2:12-cv-2554-JAM-GGH, 2012 U.S. Dist. LEXIS 179820, at *8, 2012 WL 6628966, at *3 (E.D. Cal. Dec. 19, 2012) (extending the general rule, as stated in *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003), to maritime attachment cases); *Oldendorff Carriers GmbH & Co. KG v. Grand China Shipping (Hong Kong) Co. Ltd.*, No. C-12-74, 2012 U.S. Dist. LEXIS 145949, at *4–5 (S.D. Tex. Oct. 10, 2012); *Kite Shipping LLC v. San Juan Navigation Corp.*, No. 11cv02694 BTM (WVG), 2012 U.S. Dist. LEXIS 96199, at *19–21, 2012 WL 4049936, at *6–7 (S.D. Cal. Sept. 13, 2012); *KPI Bridge Oil Singapore PTE Ltd.*, 2012 U.S. Dist. LEXIS 37751, at *10–11. Indeed, when one party has denied this principle's application in an Admiralty Rule E(4)(f) proceeding, courts have not hesitated to reject this position. *See, e.g., KPI Bridge Oil Singapore PTE Ltd.*, 2012 U.S. Dist. LEXIS 37751, at *12 –13 (finding that an alter ego claim has been alleged with sufficient detail to trigger a right to jurisdictional discovery when the complaint stated that one entity had been "dominated and controlled" by another); *cf. Equatorial Marine Fuel Mgmt. Servs. PTE v. MISC*

*Berhad*, 591 F.3d 1208, 1209–10 (9th Cir. 2010) (declining to consider a plaintiff's new contention that an agency relationship had existed).

Two other patterns can be discerned in case after case. First, many courts have passed upon the merits of Admiralty Rule E motions to vacate only after they first provided the party asserting jurisdiction with just such an opportunity. *See, e.g.*, *Sea Vill. Marina, LLC v. A 1980 Carlcraft Houseboat*, No. 09-3292 (JBS-AMD), 2010 U.S. Dist. LEXIS 5936, at *10–11, 2010 WL 33806, at *3–4 (D.N.J. Jan. 26, 2010); *OS Shipping Co. v. Global Mar. Trust(s) Private Ltd.*, No. 11–CV–377–BR, 2011 U.S. Dist. LEXIS 49054, at *2–3, 2011 WL 1750449, at *1–2 (D. Or. May 6, 2011); *Hawknet Ltd. v. Overseas Shipping Agencies*, No. 07 Civ. 5912(NRB), 2009 U.S. Dist. LEXIS 44023, at *5, 2009 WL 1309854, at *2 (S.D.N.Y. May 6, 2009). Second, while jurisdictional discovery may always be denied, the existence of a reasonable possibility of finding sufficient proof can often tip the scale in its favor. *See Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982). Arguably, it may even be required in such circumstances. *Id.* (affirming the denial of discovery on questions of personal jurisdiction where the discovery sought could not have added any significant facts).

Here, the Complaint, both as filed and as supplemented by the Amended Complaint, passes Rule E's standard. Admittedly not the most detailed of pleadings, the Complaint did proffer factual allegations that, if believed, as this Court is required to do for purposes of Admiralty Rule E, would tend to establish Azuline's status as an alter ego of Nomikos. In particular, the Plaintiff has alleged that Azuline is under the "direct control and management of Nomikos," that the various entities are "controlled and operated by the same managers and executives," and that Nomikos is the true (and only) "beneficial owner." (*See, e.g.*, Doc. 1; Doc. 26-1.) Attachments to the Complaint, meanwhile, suggest that Nomikos operated under multiple

corporate guises. (*See, e.g.*, Doc. 1-2, 1-3, 1-4.) Under applicable federal common law, such indicia of shared control and such domination are two of the many factors considered in establishing an artificial entity's status as another's mere alter ego. *See, e.g.*, *Vitol, S.A.*, 708 F.3d at 544; *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986). Unsurprisingly, therefore, such allegations have been held adequate enough to trigger a constricted period of jurisdictional discovery. *See, e.g.*, *KPI Bridge Oil Singapore PTE Ltd.*, 2012 U.S. Dist. LEXIS 37751, at *12 –13

True, these factual allegations may be "conclusory," as Azuline asserts in the Opposition. (Doc. 31 at 3.) However, while this characterization may be fatal for purposes of Rule 56, it is not under Admiralty Rule E, for this Court must accord the presumption of truth to these allegations.[13] *See, e.g.*, *829,422.42 in United States Currency Seized from Account No. XXXXX2771 at Citibank, N.A.*, No. 3:08CV00914 (DJS), 2009 U.S. Dist. LEXIS 51133, at *14–15; *United States v. $79,321*, 522 F. Supp. 2d 64, 68 (D.D.C. 2007). Standing alone, the Complaint's allegations suggested the existence of Azuline as a dummy and a sham, telltale indicia of an alter ego claim; Azuline promptly recognized as much in the Motion to Vacate, (*See* Doc. 18-1 at 5), without impairing its ability to answer, (Doc. 15). *See, e.g.*, *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, (D.D.C. 2013) ("At the pleading stage, [per Rule E] it suffices for the government to simply allege enough facts so that the claimant may understand the theory of forfeiture, file a responsive pleading, and undertake an adequate investigation."). As such, the Complaint, as now supplemented by the Amended Complaint, are more than sufficient to establish ING's entitlement to limited discovery as to Azuline's plausible

---

[13] Tellingly, Azuline's own position—that "none of the registered owners are alter egos of Nomikos," (Doc. 18-1 at 4), echoed throughout Azuline's Oppositions—is itself conclusory.

status as a sham corporation. In fact, as this case's docket well shows, the Complaint surely allowed Defendant to "frame a responsive pleading" on both its own and Nomikos' behalf as well as file a credible motion to vacate, thereby satisfying Admiralty Rule E's particularly standard. Sup. Mar. R. E(2)(a); *Vitol*, 708 F.3d at 545. In finding the Complaint sufficient for the present and ordering further discovery into a single jurisdictional issue, this Court does no more than adhere to a well-settled principle—"[T]he district court must give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction," *Hansen*, 601 F.3d at 1063–64—endorsed by the Fifth Circuit in a most persuasive opinion, *Box*, 487 F. App'x at 884.

Significantly, this decision both to recognize the temporary viability of a satisfactory pleading and to authorize discovery into a key issue, rather than to dismiss a complaint for a mere formalistic or technical defect, is buttressed by two other facts. First, so as to counter Plaintiff's allegations, Azuline has so far presented nothing but the unsworn declaration of a man over whom this Court has no apparent jurisdiction, a hodgepodge of eighteen paragraphs that references sundry other documents and expects court and party to assume the veracity of those unsupported assertions.[14] (Doc. 18-3.) When sharply managed discovery may allow this Court to conclusively confirm—or decisively negate—its jurisdiction, and when a complaint has made a colorable jurisdictional claim, justice and logic caution against denying jurisdiction on the basis of such unbacked evidence.

Second, jurisdictional discovery is no party's right. *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009) ("A party is not entitled to jurisdictional discovery if the record shows

---

[14] In a revealing, if not directly applicable, example, when only such supported affidavits exist and personal jurisdiction must be confirmed, a "plaintiff usually bears only a prima facie burden," *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015); *accord Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).

that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion"). However, it is normally disfavored in similar circumstances only "where discovery would be unnecessarily burdensome or futile." *Wright v. N.J./ Dep't of Educ.*, 115 F. Supp. 3d 490, 497 (D.N.J. 2015). Yet, Azuline, a party's undisputed owner, has so far steadfastly refused to provide Plaintiff with more than a list of vague categories and 144-pages worth of objections. Had some documentation and more than a scintilla of evidence been exchanged demonstrating the fancifulness of ING's alter ego claim, this Court may have denied the validity of Plaintiff's discovery requests.  In such a situation, a finding of futility or onerousness would be anchored in more than a defending entity's assertion. But, having nothing to examine and forced to depend purely on Azuline's mostly undisturbed silence, this Court cannot determine whether such discovery would be "unnecessarily burdensome" or "futile to [P]laintiff's cause." *See, e.g.*, *Everything Yogurt Brands, LLC v. M.A.R. Air Foods, Inc.*, No. 09-4847, 2009 U.S. Dist. LEXIS 94601, at *4–5, 2009 WL 3260629, at *2 (D.N.J. Oct. 9, 2009); *Brownstein v. N.Y.U. Med. Ctr.*, No. 94-907, 1994 U.S. Dist. LEXIS 16760, at *20, 1994 WL 669620, at *6 (D.N.J. Nov. 22, 1994). In such cases, the better policy is to allow discovery, whether Admiralty Rule E or Rule 8 applies. *See, e.g.*, *McAllister*, 87 F.3d at 766; *China Nat'l Chartering Corp*, 882 F. Supp. 2d at 588. So the Rules themselves suggest. *See, e.g.*, *Teichgraeber*, 932 F. Supp. at 1265.

**2.      Azuline's Insufficient Case Law**

Conversely, not one of the cases cited by Azuline in Opposition to Motion for Discovery, (Doc. 31 at 5), and the Opposition to Motion for Disclosure, (Doc. 26; *see also* Doc. 26-1 at 4–5), persuade this Court to reject this precedent's directions. To Azuline, each case recognizes "that a plaintiff is not entitled to bolster its case for an attachment by conducting post-attachment

discovery." (Doc. 31 at 5.) Once each opinion is carefully read and its procedural posture is diligently examined, however, its inapplicability to this proceeding is apparent.

Again and again, Azuline cites to one opinion, ignoring its pointed history: *Oldendorff Carriers GmbH & Co. KG v. Grand China Shipping (Hong Kong) Co. Ltd.*, C.A. No. C-12-074, 2012 U.S. Dist. LEXIS 188347, 2012 WL 3260233 (S.D. Tex. July 2, 2012). As ING rightly notes, (Doc. 26-1 at 7–9), this decision was specifically overturned by the district court, at which time the latter tribunal authorized precisely the kind of jurisdictional discovery that the Plaintiff now seeks. 2012 U.S. Dist. LEXIS 145949, at *4–5 (S.D. Tex. Oct. 10, 2012). Pivotally here, this decision, not the Magistrate Judge's analysis, has ample support in the relevant jurisprudence. *See, e.g.*, *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007). As the Fifth Circuit once advised, not even "the tension between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery" should dissuade a court from compelling discovery if it can "be ordered circumspectly and only to verify allegations of specific facts crucial to . . . [that jurisdictional] determination." *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992). In deciding this jurisdictional question—whether Azuline is Nomikos' alter ego and thus subject to this Court's jurisdiction under § 1333—this Court agrees.

Azuline's second case, *Unitas Fin. Ltd. v. Di Gregorio Havegacao Ltda.*, No. 99-1233 JCLLIFLAND, 1999 WL 33116415 (D.N.J. Nov. 8, 1999), is legally and factually distinct from the present matter. First, this decision was ultimately based on "Third Circuit law" stating that the garnishees' status as insurers alone cannot form a basis to attach their accounts unless and until plaintiffs are able to demonstrate that some debt is owed to defendant. *Id.* at *2. As such, while controlling law forbade attachment in the absence of any other evidence in *Unitas*, Azuline

has not claimed that such an absolute rule governs here. Second, the plaintiff there had failed to "suggest or demonstrate" that it had sought relevant discovery "from the garnishees during the five months of attachment that preceded" their conclusory affidavit; hence, it made "no showing to this Court of any efforts to obtain information regarding the insurance policies from defendants or garnishees nor do they attest that garnishees have blocked any efforts at discovery." *Id.* at *4. In contrast, ING has long sought such discovery, only to be impeded by Azuline's documented resistance.

The next decision cited by Azuline, *Mason Agency Ltd. v. Eastwind Hellas SA*, No. 09 Civ. 6474 (DLC), 2009 U.S. Dist. LEXIS 91305, 2009 WL 3109821 (S.D.N.Y. Sept. 29, 2009), is also pointedly dissimilar. In this New York case, the plaintiff had relied purely on three contractual and quasi-contractual arguments; by its own choice, the plaintiff had thusly cabined its own allegations and disavowed any other claim. Presented with such a focused complaint, the district court predicated its decision on the "undisputed" fact that the relevant contract contained no reference whatsoever to the defendant. *Id.* at *8. Here, ING had imperfectly articulated an alter ego claim in the Complaint, an allegation that is doctrinally independent of any particular contract and state body of law and that has now been supplemented by its second pleading. (*See, e.g.*, Doc. 1 at 2; Doc. 42 at 18.)

Azuline's final case, *Deiulemar Shipping SPA v. Probulk Carriers Ltd.*, 348 F. App'x 608 (2d Cir. 2009), is simply inapposite, its import oversold. In this unpublished decision upholding the district court's denial of a request for jurisdictional discovery, the Second Circuit did not, as Azuline now asserts, recognize that "a plaintiff is not entitled to bolster its case for an attachment by conducting post-attachment discovery," (Doc. 31 at 6). Instead, the Second Circuit there did no more than affirm a lower court's decision, under the generous abuse of discretion

standard, choosing not to authorize such discovery. *Deiulemar*, 348 F. App'x at 609. As such, no definite prohibition on such discovery was mentioned, much less endorsed; the decision not to authorize such an undertaking was alone affirmed. Additionally, as this three-paragraph opinion intimates, some discovery had, in fact, taken place prior to the relevant motion's tendering. *Id.* The district court thus possessed a record which allowed it to reach a number of factual conclusions to which the circuit court applied the clearly-erroneous standard and chose not to order "*further* discovery," not *all* discovery. *Id.* (emphasis added). Because it is the latter that Azuline has attempted to foreclose with its discovery responses, *Deiulemar* is readily distinguishable.

## IV.   CONCLUSION

Analyzed holistically, the Complaint and Amended Complaint's alter ego claims as to Azuline satisfy Admiralty Rule E(2)(a), thereby obviating the basis of Azuline's Motion to Vacate. Nonetheless, as Azuline has credibly raised questions about this Court's jurisdiction, and before this Court can decide these crucial threshold questions, precedent requires that ING be given an opportunity to conduct the very discovery that Azuline itself has hindered. Accordingly, this Court **GRANTS** ING's Motion to Compel Sufficient Disclosures, (Doc. 24), and the Motion to Compel Discovery, (Doc. 26), and **DENIES WITHOUT PREJUDICE** Azuline's Motion to Vacate the Rule B Attachment of the M/V Portland and Reduce Security, (Doc. 18). So as to ensure this discovery is properly limited, on or before **11:59 a.m.** on **July 5, 2016**, the Parties are to submit a joint schedule for limited discovery as to ING Bank's alter ego claim, as encapsulated in the Amended Complaint, and Azuline is ordered to provide the Plaintiff with the

initial disclosures specified in ING's Motion to Compel Sufficient Initial Disclosures on or

before **July 5, 2016**, at **11:59 a.m.**

       Signed in Baton Rouge, Louisiana, on <u>June 16, 2016</u>.


                                      **JUDGE JOHN W. deGRAVELLES**
                                      **UNITED STATES DISTRICT COURT**
                                      **MIDDLE DISTRICT OF LOUISIANA**